UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACEY E. WATTS,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | NO. ED CV 05-0612 FMO<br><br>**ORDER RE: JOINT STIPULATION** |

## PROCEEDINGS

Plaintiff filed a Complaint on July 22, 2005, seeking review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. § 405(g) ("Act"). Thereafter, the parties consented to proceed before the undersigned United States Magistrate Judge. On May 19, 2006, the parties filed a Joint Stipulation ("Joint Stip."). The court has taken the matter under submission without oral argument.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To be eligible for disability benefits, a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which

is expected to result in death or to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined to be disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. § 416.920; Tackett, 180 F.3d at 1098-99. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. 20 C.F.R. § 404.1520; Tackett, 180 F.3d at 1098.

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, who was 28 years of age on the date of her administrative hearing, is a college graduate and has a Masters of Business Administration ("MBA") degree. (Administrative Record ("AR") at 16, 64, 101, 104 & 407-10). Her past relevant employment includes work as a project manager for a market research company, an office assistant at a temporary staffing company, a general office assistant at a manufacturing company, and a kennel attendant and dog bather at a dog boarding and grooming company. (Id. at 16, 59, 71-75, 108-09 & 425-26).

Plaintiff filed for DIB and SSI on August 29, 2002,[1] alleging that she has been disabled since August 16, 2002, due to anxiety disorder, panic attacks, chronic fatigue syndrome,

---

[1] Plaintiff's application for DIB and SSI was protectively filed on August 20, 2002. (AR at 51 & 67).

2

significant weight gain, migraine headaches, and optic neuritis.[2] (AR at 15-16, 48-50, 58, 67, 395-97, 408 & 412). Her application was denied initially and on reconsideration. (Id. at 15, 37-40, 42-45, 399 & 401). On November 12, 2003, plaintiff, proceeding pro se, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (Id. at 15, 26, 402-36, 441-44 & 447-51). The ALJ also heard testimony from Kelly Winn-Boitey, a vocational expert ("VE"). (Id. at 15, 31, 402-04, 436-41 & 444-46).

The ALJ denied plaintiff's request for DIB and SSI on July 27, 2004. (AR at 12-22). Applying the five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability. (Id. at 16 & 21). At step two, the ALJ found that plaintiff suffers from severe medical impairments, consisting of "status post optic neuritis with good functional vision" and "headaches."[3] (Id. at 18). At step three, the ALJ determined that plaintiff's impairments, either individually or in combination, do not meet or equal the severity of any listing set forth in the Social Security regulations.[4] (Id. at 18 & 21).

The ALJ then assessed plaintiff's residual functional capacity[5] ("RFC"). (AR at 20-21). Specifically, the ALJ found that plaintiff retains the RFC to perform "work related activities except

---

[2] Plaintiff filed a prior application for DIB and SSI on June 1, 2001, which was denied on July 20, 2001. (AR at 15, 67, 407 & 434). After that decision, plaintiff did not pursue her application any further. (Id. at 434). Plaintiff's prior application is not part of the administrative record before the court.

[3] Inexplicably, the ALJ, in the text of her decision, found that plaintiff's anxiety and panic disorder without agoraphobia and chronic fatigue were not severe impairments, (AR at 18) ("the undersigned does not find a basis for severe impairments apart from the aforementioned optic neuritis and headaches"), but then stated in the "Findings" section that "[plaintiff's] status post optic neuritis with good functional vision, migraine headaches, anxiety and a panic disorder without agoraphobia are considered 'severe' based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b)." (Id. at 21). While not entirely clear, it appears that the ALJ intended, as stated in detail in the text of her decision, that plaintiff's severe impairments consist solely of "status post optic neuritis with good functional vision" and "headaches." (Id. at 18).

[4] See 20 C.F.R. Pt 404, Subpt. P, App. 1.

[5] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

3

for working more than 1 ½ hours on the computer during the day and from work requiring more than simple repetitive tasks." (Id.). Based on this RFC and the testimony of the VE, the ALJ determined, at step four, that plaintiff could perform her past relevant work as an office helper or kennel worker. (Id. at 20-22). Accordingly, the ALJ concluded that plaintiff was not suffering from a disability as defined by the Act. (Id. at 15 & 21-22).

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 4-6 & 9). The ALJ's decision stands as the final decision of the Commissioner.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision must be upheld if they are free of legal error and supported by substantial evidence. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." Aukland, 257 F.3d at 1035. It is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); see also Mayes, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." Mayes, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" Aukland, 257 F.3d at 1035 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" Id. (quoting Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)).

/ / /

**DISCUSSION**

I.   THE ALJ IMPROPERLY EVALUATED THE MEDICAL EVIDENCE.

Plaintiff contends that the ALJ improperly evaluated the medical evidence by adopting the opinion of nonexamining physician, Dr. T.M. Gragg, over the opinions of examining physicians, Drs. Steve Garman and Mark D. Pierce, without providing specific and legitimate reasons for doing so. (Joint Stip. at 3-5). Specifically, plaintiff argues that the ALJ inaccurately summarized the findings of Drs. Garman and Pierce and failed to expressly reject either examining physicians' evaluations with specific and legitimate reasons supported by substantial evidence. (Id. at 4). According to plaintiff, the ALJ instead adopted the opinion of Dr. Gragg, who "never met, tested nor examined the plaintiff" and "completed a check-the-box form that provides no rationale or basis for his opinion – only conclusions."[6] (Id. at 3).

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations distinguish among the opinions of three types of physicians: "(1) those who treat the plaintiff (treating physicians); (2) those who examine but do not treat the plaintiff (examining physicians); and (3) those who neither examine nor treat the plaintiff (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Benton v. Barnhart, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).

This is not to say, however, that the ALJ must accept the opinion of a treating physician, but if the ALJ chooses to reject a treating physician's opinion in favor of that of an examining physician, he or she must provide specific and legitimate reasons for doing so. Magallanes v.

---

[6]   Contrary to plaintiff's contentions, the ALJ never cited or referred to the opinion of Dr. Gragg. Rather, the ALJ appears to have relied on the opinion of another nonexamining physician, Dr. R. Toubjian, in rendering her decision. (See AR at 20) (citing to Dr. Toubjian's opinion at Exhibit 6F, p. 37). Dr. Toubjian provided an earlier but somewhat similar opinion to that rendered by Dr. Gragg. (See id. at 235-47 & 249-65). As set forth below, plaintiff's confusion between the two nonexamining physicians does not effect her argument that the ALJ improperly evaluated the medical evidence.

5

Bowen, 881 F.2d 747, 751 (9th Cir. 1989). If the opinion of the examining physician is based upon independent clinical findings that differ from those of the treating physician, then the opinion of the examining physician "may itself be substantial evidence [and] it is then solely the province of the ALJ to resolve the conflict." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751); see also Morgan v. Comm'r of the Social Security Admin., 169 F.3d 595, 600 (9th Cir. 1999) (same). A treating physician's opinion which is uncontradicted, however, may be rejected only on the basis of "clear and convincing" reasons. Lester, 81 F.3d at 830.

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d)(1)-(2) & 416.927(d)(1)-(2). If the opinion of an examining physician is rejected in favor of the opinion of a nonexamining physician, the ALJ may do so only by providing specific and legitimate reasons. Lester, 81 F.3d at 830-31. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 751 (internal quotation marks omitted). "As is the case with the opinion of a treating physician, the [ALJ] must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." Lester, 81 F.3d at 830 (internal quotation marks omitted).

Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. However, opinions of a nonexamining testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it. Andrews, 53 F.3d at 1041.

On July 18, 2001, Dr. Toubjian, a nonexamining physician, completed a Psychiatric Review Technique form, (AR at 249-65), in which he opined that plaintiff has an anxiety related disorder, characterized by recurrent severe panic attacks. (Id. at 254). Dr. Toubjian further noted that plaintiff has the following functional limitations: mild restrictions of daily living activities; mild to moderate difficulties in maintaining social function; and mild to moderate deficiencies of concentration, persistence, or pace. (Id. at 259). Although Dr. Toubjian found that plaintiff is not

1 significantly limited in her ability to understand, remember, and carry out simple instructions, he
2 determined that plaintiff has moderate limitations in her abilities to "maintain attention and
3 concentration for extended periods," "complete a normal workday and workweek without
4 interruptions from psychologically based symptoms," "perform at a consistent pace without an
5 unreasonable number and length of rest periods," and "interact appropriately with the general
6 public."[7] (Id. at 263-64). Finally, Dr. Toubjian opined that plaintiff has "adequate skills to complete
7 simple, repetitive tasks." (Id. at 265).

8 Subsequently, on November 11, 2002, Dr. Garman, an examining physician, conducted
9 a psychological evaluation of plaintiff. (AR at 137-41). At that time, Dr. Garman obtained relevant
10 history from plaintiff, reviewed clinical notes, and conducted a battery of tests, including the
11 Weschler Adult Intelligence Scale-III, the Bender Gestalt Visual Motor Test, Trails A and B, the
12 Weschler Memory Scale-III, and the Sheehan Patient Rated Anxiety Scale. (Id.). After evaluating
13 plaintiff and relevant medical records, Dr. Garman diagnosed plaintiff with panic disorder without
14 agoraphobia. (Id. at 141). Notably, Dr. Garman stated that plaintiff's score on the Sheehan
15 Patient Rated Anxiety Scale was "1.5 standard deviations above the average for patients
16 presenting with panic disorders," indicating that "the severity of her anxiety and panic attacks are
17 markedly to extremely debilitating." (Id. at 139). Although plaintiff performed normal to above
18 normal, and often in the superior range, on the remaining tests, (id. at 139-41), Dr. Garman gave
19 the following opinion:

20 In the opinion of this examiner, [plaintiff] is capable of handling funds
21 in her own interest. Her ability to understand and remember short, simple
22 instructions is not impaired. Her ability to carry out short, simple instructions
23 is not impaired. Her ability to understand and remember detailed instructions
24 is not impaired. Her ability to carry out detailed instructions is not impaired.
25 Her ability to make judgments on simple work related decisions is not

---

[7] As to the first three activities, Dr. Toubjian checked both the "not significantly limited" and "moderately limited" boxes. (AR at 263-64).

7

> impaired. Her ability to interact appropriately with the public is markedly impaired as a result of an ongoing anxiety disorder. Similarly, her ability to interact appropriately with supervisors and co-workers in an appropriate manner is moderately to markedly impaired due to her anxiety disorder. Her ability to respond appropriately to work pressures in a usual work setting is markedly impaired as a result of her anxiety disorder. Her ability to respond appropriately to changes in routine in a work setting is markedly impaired. [Plaintiff] has been suffering with this anxiety disorder for more than two years, and she has received only minimal relief from her current level of treatment. It is anticipated that her condition will persist for at least another year, however, the prognosis for significant improvement is favorable if she is able to find the right combination of psychological and psychiatric therapies appropriate to her condition.

(Id. at 141).

Thereafter, on March 19, 2004, Dr. Pierce, an examining physician, conducted a psychological evaluation of plaintiff. (AR at 369-77). Dr. Pierce reviewed plaintiff's medical records, conducted a mental status examination, and administered a series of tests, including the Wechsler Adult Intelligence Scale-III, the Wechsler Memory Scale-III, the Trails Test Parts A and B, and the Bender-Gestalt-II test. (Id.). Plaintiff performed remarkably well on the mental status examination and the majority of tests administered, often scoring in the superior range. (Id. at 371-73). However, like Dr. Garman, Dr. Pierce diagnosed plaintiff with panic disorder without agoraphobia, "reportedly severe, and to not be fully managed with four psychiatric medications." (Id. at 373). Dr. Pierce also opined, in part:

> By today's performance, [plaintiff] retains the capacity to complete medium-to-high demand vocational skills and to adapt to minimal changes in a work environment. Reasoning capacities are consistently adequate to this level of vocational functioning.

> [Plaintiff] would have estimated mild-to-moderate challenge working effectively with others, due to aspects of interpersonal dynamics seen with this examiner and from history. She can remember and comply with simple one- and two-part instructions. Her ability to concentrate adequately for a regular work schedule may be reduced by her complaint of fairly severe anxiety symptoms, while concentration and memory functions do not appear to be dramatically lessened, by testing today.

(Id. at 374).

In addressing the medical opinions of Drs. Garman, Toubjian, and Pierce, the ALJ primarily summarized the opinions without expressly rejecting or accepting them. (See AR at 20). Specifically, the ALJ stated:

> With regard to the opinions of [plaintiff's] residual functional capacity as expressed by the medical sources of record, the consultative examiner, Dr. Garman, concluded [plaintiff's] ability to understand, remember and carry out short simple or detailed instructions, and to make judgments on simple work related decisions was not impaired (Ex 3F pg 5). Dr. Garman went on to conclude that [plaintiff] was markedly impaired in her ability to interact with supervisors, coworkers and the public, as was her ability to respond appropriately to work pressures and changes, due to a panic disorder. The undersigned notes, however, that [plaintiff] acknowledged that her last panic attack had been in August 2002, and the clinical records from her treating sources reflect that her attacks are under good control with medication.
>
> The reviewing medical consultant with the State Agency opined that the record supported a residual functional capacity for simple repetitive tasks (Ex 6F pg 37).
>
> More recently, Dr. Pierce found [plaintiff] was slightly limited with regard to carrying out detailed instructions and that she had mild to moderate challenges working effectively with other individuals (Ex 10F).

9

> * * *
>
> In viewing the record in its entirety, the undersigned concludes [plaintiff] retains the residual functional capacity to perform work related activities except for working more than 1 ½ hours on the computer during the day and from work requiring more than simple repetitive tasks.

(Id.).

Under the circumstances, the court finds that the ALJ, other than summarizing a portion of the medical findings, failed to provide specific and legitimate reasons for her apparent rejection of the opinions of Drs. Garman and Pierce in favor of the opinion of Dr. Toubjian, the nonexamining physician, in determining plaintiff's RFC. See Lester, 81 F.3d at 830-31 ("the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record"); Magallanes, 881 F.2d at 751 (the ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings") (internal quotation marks omitted)).

Indeed, as to Dr. Pierce, the ALJ noted that Dr. Pierce opined plaintiff "had mild to moderate challenges working effectively with other individuals," but the ALJ did not provide any indication as to whether and why she expressly rejected such opinion. (See AR at 20). Further, the ALJ did not address Dr. Pierce's opinion that plaintiff's "ability to concentrate adequately for a regular work schedule may be reduced by her complaint of fairly severe anxiety symptoms." (Id. at 374; see also id. at 20).

Similarly, the ALJ merely summarized Dr. Garman's conclusions without expressly rejecting or accepting his opinion. (See AR at 20). To the extent that the ALJ rejected Dr. Garman's opinion on the grounds that "[plaintiff] acknowledged that her last panic attack had been in August 2002, and the clinical records from her treating sources reflect that her attacks are under good control with medication," (id. at 20), the ALJ did not cite to or reference any evidence in the administrative record to support her conclusion. (See id.). While there certainly may be support for rejecting Dr. Garman's conclusions, (see, e.g., id. at 326-27), in rejecting such conclusions,

the ALJ must provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings." Magallanes, 881 F.2d at 751 (internal quotation marks omitted); see also Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) ("it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings").

Finally, while it appears that the ALJ adopted the medical opinion of nonexamining physician, Dr. Toubjian, in determining plaintiff's RFC, the ALJ did not cite or refer to any evidence that supports Dr. Toubjian's opinion. (See AR at 20). A "non-examining physicians' conclusion, *with nothing more*, does not constitute substantial evidence." Erickson v. Shalala, 9 F.3d 813, 818 n. 7 (9th Cir. 1993) (italics in original) (internal quotation marks omitted). Although the opinion of a nonexamining physician may serve as substantial evidence that justifies rejection of the opinions of examining physicians when it is supported by other evidence in the record, see Andrews, 53 F.3d at 1041, the ALJ did not identify what specific evidence, medical or otherwise, supported Dr. Toubjian's conclusions.

II.   REMAND IS REQUIRED.

The court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004); Harmon v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir.), cert. denied, 531 U.S. 1038, 121 S.Ct. 628 (2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence where properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 595-96; Harmon, 211 F.3d at 1179-80.

Here, there are outstanding issues, which must be resolved before a final determination can be made. First, the ALJ must reevaluate the medical evidence, affording proper weight to the medical opinions of plaintiff's examining physicians or offering specific and legitimate reasons supported by substantial evidence for rejecting them. The ALJ must then reevaluate plaintiff's

11

RFC.[8]  Finally, based on a complete and accurate RFC determination, the ALJ must reassess step four, and if necessary, step five.[9]

The court does not intend this decision for publication.

Based on the foregoing, IT IS ORDERED THAT Judgment shall be entered **reversing** the decision of the Commissioner denying benefits and **remanding** the matter for further administrative action consistent with this decision.

Dated this _____ day of June, 2006.

_____
Fernando M. Olguin
United States Magistrate Judge

---

[8]  In doing so, it is unnecessary for the ALJ to reevaluate plaintiff's credibility, as plaintiff has not raised any issue before the court challenging the ALJ's assessment of her credibility. (See Joint Stip. at 3-15).

[9]  Because the court concludes that the ALJ did not properly evaluate the medical evidence, it declines to address plaintiff's remaining contentions that the ALJ failed to consider plaintiff's obesity as a medically determinable impairment and failed to consider plaintiff's chronic fatigue syndrome as a severe medically determinable impairment. (See Joint Stip. at 8-11). The parties, however, shall not be precluded from addressing those issues or any other issues, with the exception of plaintiff's credibility, on remand.